# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JANICE PEETE-BEY : 
 : 
 : 
v. : Civil No. CCB-15-272
 : 
 : 
EDUCATIONAL CREDIT : 
MANAGEMENT CORPORATION : 

## MEMORANDUM

Janice Peete-Bey has sued Educational Credit Management Corporation ("ECMC"), alleging that it wrongfully seized her assets to satisfy disputed educational debt. Specifically, her amended complaint asserts claims of conversion, violations of the Maryland Consumer Debt Collection Act ("MCDCA"), and violations of the Maryland Consumer Protection Act ("MCPA"). In September 2015, this court dismissed most of Peete-Bey's MCDCA claims and all of her MCPA claims, and it limited the remaining conversion and MCDCA claims to those premised on seizures or communications occurring within the three-year period preceding the initiation of the lawsuit. Now pending is ECMC's motion for summary judgment on the remaining claims (ECF No. 34). The motion has been fully briefed, and no hearing is necessary to its resolution. *See* Local Rule 105.6. For the reasons explained below, ECMC's motion will be granted.

## BACKGROUND

On or about August 28, 1989, Peete-Bey enrolled part-time in classes at the PSI Institute ("PSI"), which she describes as a "for-profit trade school." (*See* Opp. to Mot. Summary Judgment Ex. 1 ("Peete-Bey Dec."), ECF No. 37-2, ¶¶ 1, 4, 6.) Between September 1989 and

1

January 1990, four disbursements of federally guaranteed Stafford and Supplemental loans issued in her name. (*See* Mot. Summary Judgment, Aff. of Kerry Klisch ("Klisch Aff."), ECF No. 34-2, ¶ 7; *see also* Peete-Bey Dec. ¶¶ 1–2.) These disbursements totaled $6,625. (*See* Klisch Aff. ¶ 7.) A handwritten transcript attached to Peete-Bey's complaint lists her "date started" at PSI as September 11, 1989, and her "last day of attendance" as March 28, 1990, (*see* Compl. Ex. 2, ECF No. 2-2), but Peete-Bey asserts that she dropped out of PSI after approximately two months, around November of 1989, (Peete-Bey Dec. ¶ 6). All but $1,313 of the loans issued after Peete-Bey claims that she stopped attending classes at PSI. (*See* Klisch Aff. ¶ 7.)

The original lender for Peete-Bey's loans was Crestar Bank, and the original guarantor was the Maryland Higher Education Loan Corporation ("MHELC"). (*See id.* ¶ 8.) When Peete-Bey defaulted, MHELC paid a default claim to Crestar Bank, and "all right, title, and interest in the loans transferred to MHELC." (*See id.* ¶ 9.) MHELC then ceased operations, and "the loans along with all [Federal Family Education Loan Program ("FFELP")] guarantor responsibilities were transferred to United Student Aid Funds ("USAF")." (*See id.* ¶ 10.) Eventually, the loans were transferred to the Department of Education due to "inability to collect."[1] (*See id.*) The Department of Education assigned the loans to ECMC on or around December 17, 1997. (*See id.* ¶ 11.)

In the three years prior to the filing of the complaint, ECMC communicated with Peete-Bey regarding her loans both by telephone and in writing. (*See id.* ¶ 17; *id.* Exs. F–H, ECF Nos. 34-8–34-10; Peete-Bey Dec. ¶ 14.) During this time, Peete-Bey did not make any voluntary

---

[1] Peete-Bey filed for Chapter 13 bankruptcy in December 1997, but her bankruptcy plan was not approved. (*See* Peete-Bey Dec. ¶ 12.)

payments on the loans. (*See* Klisch Aff. ¶ 19; *id.* Ex. I, ECF No. 34-11.) In 2012, 2013, and 2014, ECMC certified Peete-Bey's debt to the Department of Education as eligible for federal offset, and the Department of Education subsequently referred it to the Department of Treasury, requesting that the Treasury Department offset funds up to the amount of the debt from any authorized sources. (*See id.* ¶¶ 20–21.) Peete-Bey's tax refunds were offset in the amounts of $1,767.49 in 2012, $4,686.57 in 2013, and $4,712 in 2014. (*See id.* ¶ 21, Ex. I.) On January 8, 2014, shortly before the third offset, ECMC sent Peete-Bey a letter stating that it had "requested ED notify the Treasury Department to suspend offset action at this time." (*See* Peete-Bey Dec. ¶ 21; Opp. to Mot. Summary Judgment Ex. 4, ECF No. 37-5.) ECMC sent Peete-Bey another letter on April 8, 2014, again confirming that it had "requested ED notify the Treasury Department to suspend offset action at this time." (*See* Peete-Bey Dec. ¶ 24; Opp. to Mot. Summary Judgment Ex. 4.) Nevertheless, Peete-Bey's tax refund was offset in the amount of $4,712 on March 26, 2014. (*See* Klisch Aff. ¶ 21, Ex. I; Peete-Bey Dec. ¶ 22.) ECMC then informed Peete-Bey that she had satisfied her outstanding obligation on the loans. (*See* Peete-Bey Dec. ¶ 25; *see also* Klisch Aff. ¶ 22.)

Peete-Bey filed this lawsuit in the Circuit Court for Baltimore City in November 2014. (*See* Compl., ECF No. 2.) ECMC removed the case to this court on diversity grounds. (*See* Notice of Removal, ECF No. 1.) After ECMC moved to dismiss her complaint, Peete-Bey filed an amended complaint, and ECMC filed a motion to dismiss the amended complaint. (*See* First Mot. Dismiss, ECF No. 11; Am. Compl., ECF No. 13; Second Mot. Dismiss, ECF No. 14.) On September 14, 2015, this court dismissed most of Peete-Bey's MCDCA claims and all of her MCPA claims, and it limited the remaining conversion and MCDCA claims to those premised on

seizures or communications occurring within the three-year period preceding the initiation of the lawsuit. (*See* Mem. and Order, ECF Nos. 21–22.) ECMC now moves for summary judgment on the remaining claims. (*See* Mot. Summary Judgment, ECF No. 34.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the non-moving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the non-moving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

ECMC offers two arguments in support of its motion for summary judgment. First, it

contends that Peete-Bey's state-law claims are preempted by federal law—namely, the Higher Education Act ("HEA") and its implementing regulations. Second, ECMC asserts that there are no disputed issues of material fact and that it is entitled to judgment on both the conversion and MCDCA claims as a matter of law. The court agrees that Peete-Bey cannot prevail on her state-law claims. Thus, it declines to reach the parties' preemption arguments.

I. Conversion Claim

ECMC has moved for summary judgment on the conversion claim, arguing that the undisputed facts preclude Peete-Bey from establishing the elements of conversion as a matter of law. In response, Peete-Bey contends that ECMC has misinterpreted the case law and that summary judgment is inappropriate in light of disputed issues of material fact.

As noted, this court previously limited Peete-Bey's conversion claim to seizures that occurred between November 17, 2011, and November 17, 2014, the three-year period preceding Peete-Bey's initiation of the case. ECMC has provided a "Borrower Transaction History Report" listing transactions associated with Peete-Bey's account from August 18, 1997, to March 26, 2014. (*See* Klisch Aff. ¶ 19, Ex. I.) The report reflects three adjustments to the account during the relevant period: an IRS offset of $1,767.49, dated October 3, 2012; an IRS offset of $4,686.57, dated March 13, 2013; and an IRS offset of $4,712, dated March 26, 2014. (*See id.* Ex. I at 11–13.) Each IRS offset entry includes columns with the notations "J - Adjustment" and "D - Department of Education." (*See id.*) Because the column headers are illegible, however, the significance of these notations is not clear. No other adjustments are listed for the relevant period, (*see id.*), and the parties appear to agree that only tax offsets are at issue, (*see* Mem. Mot. Summary Judgment, ECF No. 34-1, at 17 (citing Klisch Aff. ¶¶ 19 & 21, Ex. I); Opp. to Mot.

5

Summary Judgment, ECF No. 37-1, at 1.)[2]  Thus, for purposes of the conversion claim, the court will limit its analysis to the three tax offsets identified above.

Under Maryland law, "[c]onversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004).  The first element consists of "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Id.* (quoting *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999)).  The second element encompasses "a wide range of different states of mind." *Id.* at 836. "At a minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id.* (citing *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (Md. 1985)).  A defendant may be liable even if he or she "acted in good faith and lacked any consciousness of wrongdoing." *Id.*

To the extent that the unpaid tax refunds constitute money belonging to Peete-Bey, the claim fails because, under Maryland law, "monies are intangible and, therefore, not subject to a claim for conversion." *Jasen*, 731 A.2d at 966.  There is a limited exception for "funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction." *Id.* at 966 (quoting 1 Fowler V. Harper et al., *The Law of Torts*, § 2.13, at 2:56 (3d ed. 1986)); *see Darcars*, 841 A.2d at 834 n.3 ("As a general rule, money, i.e., currency, is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds.").  Where the defendant "commingles [the funds] with other monies," however, "the money 'loses its specific identity

---

[2] In her amended complaint, Peete-Bey alleges that ECMC garnished her wages during the relevant period, (*see* Am. Compl. ¶¶ 46, 62), but she has not provided supporting evidence or addressed this allegation in the briefing.

and may no longer be the subject of a conversion action.'" *Gibbons v. Bank of America Corp.*, No. JFM-08-3511, 2012 WL 94569, at *9 (D. Md. Jan. 11, 2012) (quoting *Simmons v. Lennon*, 773 A.2d 1064, 1075 (Md. App. 2001)).[3] Here, Peete-Bey seeks recovery of an *amount* of money from ECMC, not of specific, identifiable property that was or should have been held apart. *Cf. Sage Title Grp., LLC v. Roman*, No. 87, Sept. Term 2016, 2017 WL 3404786, at *6–8 (Md. Aug. 4, 2017) (holding that funds held in an escrow account were not commingled, and remained specifically identifiable, where the defendant's ledger listed the amount of each check, the date of the transaction, the payee, and the date each check cleared, and that ledger matched the plaintiff's records identifying each deposit by reference number and amount). Peete-Bey's claim thus fails as a matter of law. *See Durm v. Am. Honda Finance Corp.*, No. WDQ-13-223, 2013 WL 6490309, at *6 (D. Md. Dec. 9, 2013) (dismissing conversion claim where plaintiff sought damages rather than return of the exact funds paid); *Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 177 (Md. Ct. Spec. App. 1986) (conversion not available where the defendant did not have the physical check or "any specific, identifiable proceeds from the check").

To the extent that the unpaid tax refunds constitute not "monies" but some other intangible property interest, the claim also fails. In Maryland, "the tort of conversion generally may extend to the type of intangible property rights that are merged or incorporated into a transferable document," but it does not encompass "completely intangible rights" or "situations in which the relevant document itself has not been transferred." *Jasen*, 731 A.2d at 965. That distinction is dispositive here, where there is no evidence or even allegation that a document incorporating Peete-Bey's rights was transferred to ECMC. (*See* Peete-Bey Dec. ¶¶ 21–25

---

[3] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

(describing offset of tax refunds); Klisch Aff. ¶¶ 20–21 (discussing offset process and ECMC's role).)

For the reasons discussed above, the court will grant ECMC's motion for summary judgment as to the conversion claim. This is not to say that Peete-Bey has suffered no harm. On the contrary, if the allegations in her amended complaint are true, the money ECMC collected by tax refund offsets was " for an education Ms. Peete-Bey never received." (*See* Am. Compl. ¶ 64.) She has not, however, advanced the evidence necessary to prove the tort of conversion, and therefore is not entitled to relief.

II. <u>MCDCA Claim</u>

The court previously dismissed Peete-Bey's MCDCA claims except insofar as they were premised on violations of § 14-202(6) that occurred within the three-year period preceding the filing of the complaint.[4] Section 14-202(6) prohibits "[c]ommunicat[ing] with the debtor . . . with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor." *See* Md. Code Ann., Com. Law § 14-202(6). Peete-Bey alleges that ECMC violated that section "by purs[u]ing [her] debt for over eighteen years when the right to collect it did not exist." (Am. Compl. ¶ 78.).

ECMC raises two arguments in support of its motion for summary judgment. First, it asserts that Peete-Bey's challenge is to the validity of the debt, rather than the method of debt collection, which is not permitted under the MCDCA. Second, it contends that, on the undisputed facts, its communications with Peete-Bey do not constitute actionable harassment. Peete-Bey responds that there is "no set benchmark under Maryland law to determine what constitutes harassing communications" and that there is a material dispute of fact regarding how

---
[4] The MCDCA is codified at Md. Code Ann., Com. Law II §§ 14-201–14-204.

many calls ECMC made to Peete-Bey during the relevant period. (Mem. Opp. to Mot. Summary Judgment, ECF No. 37-1, at 22–23.)

"The MCDCA 'protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts.'" *Stewart v. Bierman*, 859 F. Supp. 2d 754, 769 (D. Md. 2012) (quoting *Shah v. Collecto, Inc.*, DKC-04-4059, 2005 WL 2216242, at *10 (D. Md. Sept. 12, 2005)). "The MCDCA, and in particular § 14-202, is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012). Because § 14-202(6) concerns the "manner" in which the debt collector communicates with the debtor, Md. Code Ann., Com. Law § 14-202(6), Peete-Bey cannot obtain relief solely by showing that "the right to collect [the debt] did not exist," (*see* Am. Compl. ¶ 78).[5]

The parties agree that ECMC called and sent written correspondence to Peete-Bey between November 17, 2011, and November 17, 2014. Based on a review of its records related to Peete-Bey, ECMC has identified "26 oral or written communications, where either ECMC initiated the communication or where [Peete-Bey] actually spoke with a representative of ECMC," over that three-year period. (Mem. Mot. Summary Judgment at 5 (citing Klisch Aff. ¶ 17).) According to ECMC's records, the communications included telephone calls, letters, and e-mails. (*See* Klisch Aff. ¶ 17, Exs. F–H.) ECMC sometimes called Peete-Bey's home and cell

---

[5] As the court noted in its previous opinion, Mem. at 11 n.7, there is a potential tension in this district's case law as to whether the MCDCA "focuses [solely] on the conduct of the debt collector," *see Fontell*, 870 F. Supp. 2d at 405, or whether it may, in certain instances, be used to attack the validity of the underlying debt, *see Stewart*, 859 F. Supp. 2d at 769. To the extent such a tension exists, it relates to a provision of the MCDCA not at issue here, and it is unnecessary for this court to resolve. In both *Stewart* and *Fontell*, the plaintiff's claim arose under § 14-202(8), which provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *See* Md. Code Ann., Com. Law § 14-202(8). The provision under which Peete-Bey seeks relief, by contrast, relates exclusively to the conduct of the debt collector. *See id.* § 14-202(6) (prohibiting debt collectors from communicating with debtors in an abusive or harassing manner).

phone numbers, although many of the calls during this period were initiated by or in response to messages from Peete-Bey. (*See id.*) The written correspondence included replies to Peete-Bey's requests for documents, privacy letters, and notices regarding the tax offset suspension. (*See id.*)

Peete-Bey does not dispute the accuracy of ECMC's detailed collection records, nor does she offer evidence of any communications that are not reflected in those logs. (*Compare* Klisch Aff. ¶ 17, Exs. F–H, *with* Peete-Bey Dec. ¶¶ 14–21, 24–25.) Rather, with respect to the communications, her declaration simply states that ECMC contacted Peete-Bey an unspecified number of times during the relevant period, (Peete-Bey Dec. ¶¶ 14, 20–21, 24), that the communications negatively affected her life, (*id.* ¶¶ 15, 19), that the ECMC representatives "were not always polite," (*id.* ¶ 18), that she "did not give [ECMC representatives] authority to call [her] using autodialers," (*id.* ¶ 16), and that "ECMC called [her] cellular telephone number to collect th[e] debt," (*id.* ¶ 17). Based on the undisputed facts, no reasonable jury could conclude that ECMC communicated with Peete-Bey in a harassing or abusive manner.[6] Nothing in the record reflects the kind of conduct that courts have found to violate § 14-202(6) or the analogous provision of the Fair Debt Collection Practices Act: multiple calls over a short period, a high overall volume of calls, immediate callback after the debtor has hung up, continued calls after a request to stop from the debtor, foul or abusive language, calls late at night, repeated calls to the debtor's family members and friends, and so on. *Cf. Awah v. Capital One Bank, N.A.*, No. DKC-14-1288, 2016 WL 930975, at *4–7 (D. Md. Mar. 11, 2016) (rejecting similar § 12-202(6) claim), *appeal dismissed*, No. 16-1361, 2016 WL 4501959 (4th Cir. Aug. 29, 2016) (per curiam).

---

[6] To the extent that Peete-Bey's claim is based on her reaction to ECMC's collections activity, rather than to ECMC's conduct, it falls outside the scope of § 14-202(6). *See* Md. Code Ann., Com. Law § 14-202(6) (imposing liability for communications that "reasonably can be expected to abuse or harass the debtor," rather than communications that an individual debtor may perceive as abuse or harassment).

Peete-Bey's conclusory assertion that it is not clear "how many calls ECMC made during this time period," (*see* Mem. Opp. to Mot. Summary Judgment at 23), is not sufficient to raise a genuine issue of fact.

Absent additional evidence that ECMC communicated with Peete-Bey "with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor," *see* Md. Code Ann., Com. Law § 14-202(6), Peete-Bey's MCDCA claim cannot survive summary judgment.

## CONCLUSION

For the reasons stated above, ECMC's motion for summary judgment will be granted. A separate order follows.

August 29, 2017 /S/
Date Catherine C. Blake
United States District Judge